NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
 File Name: 19a0150n.06

 Case No. 18-3181

 UNITED STATES COURT OF APPEALS
 FOR THE SIXTH CIRCUIT

 FILED
 Mar 28, 2019
TOM KONDASH, ) DEBORAH S. HUNT, Clerk
 )
 Plaintiff-Appellee, )
 ) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR
 ) THE SOUTHERN DISTRICT OF
KIA MOTORS AMERICA, INC., and KIA ) OHIO
MOTORS CORP., )
 )
 Defendants-Appellants. )
 )

BEFORE: GRIFFIN and DONALD, Circuit Judges; and BERTELSMAN, District Judge.

 BERNICE BOUIE DONALD, Circuit Judge. In this interlocutory appeal, the parties

dispute whether the district court properly declined to seal records that allegedly contain trade

secrets. Because we find that the district court did not abuse its discretion in determining not to

seal the documents and did not err in determining that the documents did not contain trade secrets,

we AFFIRM.

 I.

 Plaintiff Tom Kondash brought a class action lawsuit against Defendants Kia Motors

America, Inc. and Kia Motors Corporation (collectively, “Kia”), claiming that the panoramic


 The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by
designation.
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

sunroofs in certain Kia vehicles are defective because the glass breaks without warning. In support

of his motion for class certification, Kondash sought to file numerous internal documents he had

received from Kia during discovery. Pursuant to the protective order put in place for the discovery

process, Kondash initially sought to file the documents under seal. However, the district court

denied Kondash’s motion, directing that the documents be filed unsealed. Kia filed an emergency

motion for reconsideration, arguing that many of its records contained trade secrets. In response,

the district court ordered Kondash to file the records conditionally under seal. The district court

then held an evidentiary hearing, at which a witness for Kia testified that the records were

confidential and contained trade secrets.

 At the end of the hearing, the district court ordered the parties to jointly review the

documents and identify anything that both parties agreed contained trade secrets. The court

ordered the parties to analyze in detail, document by document, the propriety of secrecy, and

provide reasoning and legal citations to support their recommendations. After conferring, the

parties withdrew the request to seal as to some of the records, agreed that some records should be

filed unsealed but with redactions and some should be sealed entirely, and disagreed as to whether

some of the documents should be sealed. The parties presented their positions to the district court

for review. Upon review, the court accepted the withdrawn requests and ordered those records to

be filed unsealed. The court then reviewed the documents the parties agreed should be filed

unsealed but with redactions and concluded that the redactions were appropriate. Next, the district

court ordered sealed certain documents that it found contained trade secrets. As to the records on

which the parties disagreed, the district court largely determined that the documents did not contain

trade secrets and ordered those files filed unsealed. Kia now appeals the district court’s decision

to file the disputed documents unsealed.

 -2-
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

 II.

 Kia contends that the district court erred in finding the disputed documents should be

unsealed, setting forth two arguments: (1) the district court applied the incorrect standard for

sealing records; and (2) the district court erred in holding that the disputed documents did not

contain protectable trade secrets. We address each of these arguments in turn.

 A. Standard of Review for Sealing Documents

 We review decisions of the district court to seal court documents or records, as well as

orders lifting or modifying a seal, for abuse of discretion. Meyer Goldberg, Inc. v. Fisher Foods,

Inc., 823 F.2d 159, 161 (6th Cir. 1987). “An abuse of discretion exists when the district court

applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly

erroneous findings of fact.” First Tech. Safety Sys., Inc. v. Depinet, 11 F.3d 641, 647 (6th Cir.

1993) (citing Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26, 30 (6th Cir. 1988))

 A court’s discretion to seal records is bounded by a “long-established legal tradition” of

the “presumptive right of the public to inspect and copy judicial documents and files.” In re

Knoxville News–Sentinel Co., Inc., 723 F.2d 470, 474 (6th Cir. 1983). Because of the importance

of the rights involved, we have held that “the district court’s decision [to seal documents] is not

accorded the traditional scope of ‘narrow review reserved for discretionary decisions based on

first-hand observations.’” Id. at 476 (quoting United States v. Criden I, 648 F.2d 814, 818 (3d Cir.

1981)). As a result, “[o]nly the most compelling reasons can justify non-disclosure of judicial

records.” Id. (internal citations omitted).

 The party seeking to seal records has the heavy burden of overcoming the “strong

presumption in favor of openness.” Shane Grp., Inc. v. Blue Cross Blue Shield, 825 F.3d 299, 305

(6th Cir. 2016) (citing Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1180 (6th

 -3-
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

Cir. 1983)). To meet this burden, the party must show three things: (1) a compelling interest in

sealing the records; (2) that the interest in sealing outweighs the public’s interest in accessing the

records; and (3) that the request is narrowly tailored. See id. (citations omitted). Where a party

can show a compelling reason for sealing, the party must then show why those reasons outweigh

the public interest in access to those records and that the seal is narrowly tailored to serve that

reason. Id. To do so, the party must “analyze in detail, document by document, the propriety of

secrecy, providing reasons and legal citations.” Id. at 305-06 (citing Baxter Int’l, Inc. v. Abbott

Lab., 297 F.3d 544, 548 (7th Cir. 2002)).

 The presumption in favor of public access is strong when public safety is implicated. See

Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1180-81 (6th Cir. 1983) (vacating

the district court’s sealing order because the litigation potentially involved the information

regarding the true contents of cigarettes). “It is well-established that confidentiality provisions,

protective orders, and the sealing of cases are appropriate litigation tools in some circumstances.

However, the interests of public health and safety will often outweigh any confidentiality interests

that might be implicated.” NHTSA Enforcement Guidance Bulletin 2015-01: Recommended Best

Practices for Protective Orders and Settlement Agreements in Civil Litigation, 81 Fed. Reg. 13026-

02, 13027 (March 11, 2016). This is particularly true in class actions, where, because of the interest

of a broader public outside of the named parties, the standards for overcoming the presumption of

openness “should be applied [. . .] with particular strictness.” Shane Group, Inc. v. Blue Cross

Blue Shield of Michigan, 825 F.3d 299, 305 (6th Cir. 2016) (quoting In re Cendant Corp., 260

F.3d 183, 194 (3d Cir. 2001)).

 -4-
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

 Where a district court finds that sealing is appropriate, the court must set forth its specific

findings and conclusions “which justify nondisclosure to the public.” Id. at 306 (quoting Brown

& Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1176 (6th Cir. 1983)).

 Kia contends that the district court erred by impermissibly including in its trade secret

determination consideration of whether access to the documents was of public importance. This

is not the case. The district court properly conducted its analysis by first determining whether a

trade secret existed and then, after finding no trade secret, explained the public’s interest in access

to the relevant documents. See, e.g. Kondash v. Kia Motors America, Inc., No. 1:15-cv-506, 2018

WL 770418, at *4 (S.D. Ohio Feb. 7, 2018) (“Kia has not demonstrated that the reports and

investigation materials are trade secrets. . . . Furthermore, the documents’ contents are of great

public interest, particularly to drivers concerned about their safety and class members interested

in their legal claims in this case.”). Not only was it proper for the district court to address whether

the information was of public importance, it was a necessary step in the analysis. While the

existence of a trade secret will generally satisfy a party’s burden of showing a compelling reason

for sealing documents, even if a trade secret does not exist, a court may still find a compelling

reason exists; further, even if a district court finds that a trade secret exists, it must still determine

whether public interest outweighs the moving party’s interests in protecting their trade secret. See

Shane Group, Inc. 825 F.3d at 308 (“‘[I]n civil litigation, only trade secrets, information covered

by a recognized privilege (such as attorney-client privilege), and information required by statute

to be maintained in confidence (such as the name of a minor victim of a sexual assault),’ is typically

enough to overcome the presumption of access.”) (emphasis added) (quoting Baxter, 297 F.3d at

546).

 -5-
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

 Though the district court’s discussion was sparse, it is clear from the opinion that the court

determined whether the documents contained trade secrets independent of its consideration

regarding the public’s interest in the information. Accordingly, we find that the district court

applied the correct legal standard and therefore did not abuse its discretion.

 B. Trade Secret Determination

 Next, Kia argues that the district court erred in determining that the documents at issue

contained no trade secrets. Under Ohio law, a trade secret is defined as “information . . . that

satisfies both of the following: (1) It derives independent economic value, actual or potential, from

not being generally known to, and not being readily ascertainable by proper means by, other

persons who can obtain economic value from its disclosure or use[; and] (2) [i]t is the subject of

efforts that are reasonable under the circumstances to maintain its secrecy.” Ohio Rev. Code

§ 1333.61(D)(1)-(2). “This Court reviews for clear error the district court’s factual conclusion that

[no trade secrets exist].” Hickory Specialties, Inc. v. Forest Flavors Int’l, Inc., No. 99-5003, 2000

WL 687681 at *7 (6th Cir. May 19, 2000) (citing Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470,

474 (1974)); see also Kewanee Oil Co., 416 U.S. at 474 (1974) (noting that the Sixth Circuit had

reviewed a finding that a trade secret existed for clear error).

 The Ohio Supreme Court has set forth six factors to be considered in determining whether

an item constitutes a trade secret:

 “(1) The extent to which the information is known outside the business; (2) the
 extent to which it is known to those inside the business . . .; (3) the precautions
 taken by the holder of the trade secret to guard the secrecy of the information;
 (4) the savings effected and the value to the holder in having the information as
 against competitors; (5) the amount of effort or money expended in obtaining and
 developing the information; and (6) the amount of time and expense it would take
 for others to acquire and duplicate the information.”

Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp., 258 F. App’x 860, 861-62 (6th

Cir. 2008) (quoting State ex rel. Plain Dealer v. Ohio Dep’t of Ins., 687 N.E.2d 661, 672 (1997)).
 -6-
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

A finding as to one factor is not dispositive, but “‘[a] business or possessor of a potential trade

secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret

status.’” Id. at 682 (quoting State ex rel. Plain Dealer, 687 N.E.2d at 672). The fact that a

document will reveal “competitively-sensitive financial and negotiating information” is not an

adequate justification for sealing—rather, “the proponents of closure bears the burden of showing

that ‘disclosure will work a clearly defined and serious injury.’” Shane Group, Inc., 825 F.3d at

307 (quoting In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001)).

 Kia has not shown that the district court committed clear error in determining the disputed

documents do not contain trade secrets. Although the district court’s explanation was sparse, it is

evident the court applied Ohio’s standard for determining whether a trade secret exists. See, e.g.

Kondash, 2018 WL at *4 (“Kia has not demonstrated that the reports and investigation materials

are trade secrets. . . . [T]he Court fails to see how these documents constitute a ‘procedure’ or

‘process’ that derives independent economic value from not being known and is the subject of

efforts to maintain its secrecy. . . . The knowledge that ceramic paint weakens tempered glass is

already known throughout the automotive industry.”).

 Additionally, Kia contends that the district court erred in its factual determinations because

it distinguished testing for product development and manufacturing from testing in response to a

problem; but its cited authority does not support Kia’s proposition. Kia cites to two cases where

Ohio courts found that a company’s testing and analysis of its product performance post-market

entrance are trade secrets. See Procter & Gamble Co. v. Stoneham, 747 N.E.2d 268, 271-72 (Ohio

Ct. App. 2000) (noting that a former P&G employee had knowledge of, among other things, the

company’s plans for “revitalization of existing products,” “the perceived weakness of products,”

and relevant “market research” and finding that the employee was “privy to massive amounts of

 -7-
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

information that constituted trade secrets”); Valco Cincinnati, Inc. v. N&D Machining Service,

Inc., 492 N.E.2d 814, 817 (Ohio 1986) (finding the company’s materials and manufacturing

processes were trade secrets because they were unique and “developed only after a great deal of

experimentation, testing and field experience”). However, neither case dealt with investigative

reports created in response to, and for the purpose of, investigating an incident that resulted in

litigation. Further, in both cases, the court found that the Ohio’s six-factor test weighed in favor

of the proponent of sealing the records because, among other reasons, the information was not

widely known, and the company had taken steps to keep the information private. In contrast, the

district court in this case found the opposite; a finding that Kia has not demonstrated was clearly

in error. Finally, although Kia cites to four cases outside the Sixth Circuit where the same type of

information—internal investigation processes pertaining product issues that resulted in

litigation—were considered trade secrets, we are not bound by those decisions, especially where,

as here, the district court specifically applied Ohio-trade-secret law, and those cases did not.1

 III.

 Because the district court applied the correct standard when determining whether to seal

the disputed documents and did not commit clear error in determining whether the disputed

documents contained trade secrets, we AFFIRM the district court’s decision.

1
 See McDonnell v. Southwest Airlines Co., 292 F. App’x 679, 680 (9th Cir. Sep. 11, 2008) (district court did not abuse
its discretion in sealing documents showing “procedures and communications geared toward investigating the cause
of the airline crash”); Velasco v. Chrysler Grp. LLC, No. CV 13-08080 DDP, 2017 WL 388797, at *3 (C.D. Cal. Jan.
26, 2017) (sealing “technical data pertaining to efforts to understand failures in [the product that] are inextricably
intertwined with information about Chrysler’s technical capacity”); Grayson v. Gen. Elec. Co., No. 3:13-cv-1799,
2017 WL 923907, at *3 (D. Conn. Mar. 7, 2017) (same); McCrary v. Elations Co. LLC, No. EDCV 13-0242, 2014
WL 12561600, at *5-*6 (C.D. Cal. Dec. 8, 2014) (same).

 -8-
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

 GRIFFIN, Circuit Judge, dissenting.

 In my view, the district court committed multiple legal errors and thus abused its discretion.

Given these errors, I would vacate the district court’s order and remand for a ruling under the

correct legal standards. I respectfully dissent.

 I.

 Kia’s challenge takes us to the intersection of two robust legal interests: (1) the public’s

interest in access to court records and (2) a party’s interest in protecting its trade secrets.

 Access to Court Records. The public has a strong interest in knowing what information

court records contain. Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1180 (6th

Cir. 1983). Such knowledge allows the public to assess the conduct giving rise to a lawsuit, the

lawsuit’s result, and the result’s merits. Shane Grp., Inc. v. Blue Cross Blue Shield, 825 F.3d 299,

305 (6th Cir. 2016). This interest brings with it a “strong presumption in favor of openness.” Id.

(quoting Brown & Williamson, 710 F.2d at 1179). And this presumption imposes a heavy burden

on a party seeking to seal court records. Id. (citing In re Knoxville News-Sentinel Co., 723 F.2d

470, 476 (6th Cir. 1983)).

 To meet that burden, a party must show three things. First, it must show a compelling

interest in sealing the records. Id. This requires a party to provide, for each record, detailed reasons

why the record warrants sealing and legal citations to support those reasons. Id. Second, the party

must show why its interest in sealing the records outweighs the public’s interest in accessing them.

Id. at 307. And third, the party must show that its request is narrowly tailored. Id.

 Trade Secrets. The concept of trade secrets originated in England in the early 1800s and

came to the United States a few decades later. See Sharon K. Sandeen & Christopher B. Seaman,

Toward a Federal Jurisprudence of Trade Secret Law, 32 Berkeley Tech. L.J. 829, 835 (2017).

In an era of industrialization, trade secrets protected proprietary manufacturing knowledge. Id.
 -9-
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

Since then, much has changed. The source of trade-secret law has expanded—starting in the

common law and moving to the Restatement of Torts, state law, and eventually federal law. See id.

at 835–53. The scope of what constitutes a trade secret has expanded as well; it now comprises

financial, business, scientific, technical, economic, and engineering information. See 18 U.S.C.

§ 1839(3).

 With this expansion has come a three-part test for determining whether a record includes

trade secrets. The record must contain the right type of information. Id. The party that owns the

record must take reasonable measures to keep the information secret. Id. at § 1839(3)(A). And

the information must derive independent economic value from not being generally known. Id. at

§ 1839(3)(B).

 Intersection of the Interests. Whether a record contains trade secrets and whether it should

be sealed are distinct inquiries. The former requires factual findings; the latter requires legal ones.

Thus, when a party asks a court to seal records because they contain trade secrets, the court must

conduct a bifurcated analysis. First, the court must make factual findings as to which types of

information the records contain, whether the party takes reasonable measures to keep the

information secret, and whether the information derives value from its secrecy. Then, the court

must reach legal conclusions as to whether the party has a compelling interest in sealing the

records, whether that interest outweighs the public’s interest in accessing them, and whether the

party has narrowly tailored its request.

 The answer to the first inquiry affects the answer to the second. Trade secrets are an

exception to the presumption in favor of open court records. Shane Grp., 825 F.3d at 308; Brown

& Williamson, 710 F.2d at 1180. But the exception is neither automatic nor universal. The

existence of a trade secret within a record shows that a party has a compelling interest in sealing it

 - 10 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

that outweighs the public’s interest in accessing it but speaks not to whether the request to seal is

narrowly tailored. Consider, for example, a lengthy internal memorandum that mentions a single

trade secret in a single sentence. A request to seal the entirety of the record would lack narrow

tailoring because redaction could preserve the trade secret while providing access to the rest of the

record. Put differently, a party may not invoke the trade-secret exception to shield from the public

eye other, less sensitive information.

 The Result. After Kondash filed the records conditionally under seal, Kia asked the district

court to keep many of them sealed because they contained investigation findings, pricing

information, government communications, and other sensitive data Kia believed were trade

secrets. Regarding the records the court ordered unsealed, it grouped them into five categories,

each of which it analyzed separately. Kondash v. Kia Motors America, Inc., No. 1:15-cv-506,

2018 WL 770418, at *4–5 (S.D. Ohio Feb. 7, 2018). For some categories, it discussed at length

whether it would seal the records. Id. For others, it provided only a few sentences devoid of legal

support. Id. at *4. Unlike the majority, I would hold that the district court, in ruling as it did,

abused its discretion by committing four legal errors.

 First, the district court conflated the trade-secret inquiry with the records-sealing inquiry.

The majority would have us think otherwise, but they misrepresent the district court’s decision.

They say “[t]he district court properly conducted its analysis by first determining whether a trade

secret existed and then, after finding no trade secret, explained the public’s interest in access to the

relevant documents.” For support, they excerpt this quote from the district court’s opinion:

 Kia has not demonstrated that the reports and investigation materials
 are trade secrets. . . . Furthermore, the documents’ contents are of
 great public interest, particularly to drivers concerned about their
 safety and class members interested in their legal claims in this case.

 - 11 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

Notice the ellipsis. It omits four sentences. And those sentences reveal the error:

 Kia has not demonstrated that the reports and investigation materials
 are trade secrets. Unlike in [Proct[e]r & Gamble Co. v. Ranir, LLC,
 No. 1:17-CV-185, 2017 WL 3537195 (S.D. Ohio Aug. 17, 2017)],
 Kia does not propose narrowly-tailored [sic] redactions to these
 documents. More importantly, however, the Court fails to see how
 these documents constitute a “procedure” or “process” that derives
 independent economic value from not being known and is the
 subject of efforts to maintain its secrecy. Unlike in [Procter &
 Gamble Co. v. Stoneham, 747 N.E.2d 268 (Ohio Ct. App. 2000)],
 there is no evidence that these reports were created with the
 significant outlay of time and money. Rather, all appear to be
 routine forms or documents, or reports generated in response to
 potential litigation over sunroof shattering. Under the logic
 presented by Kia, virtually all internal documents would fall under
 the category of a “trade secret.”
 Furthermore, the documents’ contents are of great public interest,
 particularly to drivers concerned about their safety and class
 members interested in their legal claims in this case.

Id. at *4 (emphasis added). The district court begins by stating a conclusion: Kia’s investigation

records don’t contain trade secrets. One reason it gives for this conclusion is that the records don’t

contain information that derives independent economic value from not being generally known. To

be sure, that’s part of a trade-secret inquiry. 18 U.S.C. § 1839(3)(B). But the first reason the

district court gives is that Kia failed to propose narrowly tailored redactions. And that’s not part

of a trade-secret inquiry; it’s part of a record-sealing one. See Shane Grp., 825 F.3d at 307.

 The district court made the same error elsewhere as well. For example, it said:

 The knowledge that ceramic paint weakens tempered glass is
 already known throughout the automotive industry. To the extent
 the document focuses on how much of the Kia sunroof is covered in
 ceramic paint, that information can be discerned by looking at a
 vehicle. Thus, sealing is not appropriate.

 - 12 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

Kondash, 2018 WL 770418, at *4. This ties the sealing inquiry to whether the information was

publicly known, which is a part of the trade-secret inquiry. The district court also said:

 The warranty and/or goodwill payments are not the type of pricing
 and negotiation information that would reveal highly sensitive data
 about Kia. Rather, the goodwill payments and information about
 warranty payments are extremely relevant to this action and thus of
 great public interest. The Court, therefore, will unseal these
 documents.

Id. at * 5. This ties the data’s sensitivity, which is a part of the trade-secret inquiry, to the public’s

interest in accessing it, which is a part of the sealing inquiry. The district court further said:

 The Court is persuaded that dealer price information is private.
 Therefore, the Court documents should be unsealed except that the
 dealer price information may be redacted[.]

Id. This ties the sealing inquiry to whether the information was publicly known, which is a part

of the trade-secret inquiry. Finally, the district court said:

 Kia asserts this information is confidential because it includes ball[-
 ]drop[-] testing results and the documents are treated as confidential
 by law. The Court finds this investigative testing as a result of the
 shattering incidences is distinguished from testing performed while
 developing a new product. As such [sic], the Court will not seal [the
 exhibits].

Id. This ties the sealing inquiry to whether the information is the trade-secret type.

 These portions of the district court’s decision don’t comport with the bifurcated, sequential

analysis the law requires. First, a court must ask whether a record contains trade secrets. To do

so, it must examine the information the records contain, the steps the record’s owner takes to keep

the information secret, and what value, if any, that information derives from being secret. 18

U.S.C. § 1839(3). Then, with the answer to the trade-secret inquiry in mind, a court must ask

whether it should seal the records. To do so, the court must examine the interest in nondisclosure

of the party seeking sealing, the public’s interest in accessing the record, and the scope of the

 - 13 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

request to seal. Shane Grp., 825 F.3d at 305–07. By mixing and matching the prongs of these

distinct inquires, the district court erred.

 The district court’s second legal error occurred when it ruled that Kia’s records didn’t

contain trade secrets without making the factual findings that the law requires. As discussed above,

that inquiry involves findings as to which types of information the records contain, whether the

records’ owner takes reasonable measures to keep that information secret, and whether the

information derives value from its secrecy. See 18 U.S.C. § 1839(3). If a court concludes that

records fail as to one of the factors, it need not address the others. But it may not skip the process

entirely, which is what the district court did. Of fifteen potential factual findings, it made one:

 Independent
 Reasonable economic value
 Right type of measures to keep from not being
 information? information secret? generally known?
 Internal-
 Investigation
 Records
 Ceramic-Paint
 Records
 Warranty,
 Goodwill, and No.
 Parts-Data Records
 Vehicle-Package-
 Pricing Records
 Government-
 Communication
 Records

Kondash, 2018 WL 770418, at *4–5. To be sure, the district court more than once mentioned

whether the records contained private information. See, e.g., id. at *4 (“The knowledge that

ceramic paint weakens tempered glass is already known throughout the automotive industry. To

the extent the document focuses on how much of the Kia sunroof is covered in ceramic paint, that

 - 14 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

information can be discerned by looking at a vehicle.”) (emphasis added); id. at *5 (“The warranty

and/or goodwill payments are not the type of pricing and negotiation information that would reveal

highly sensitive data about Kia.”) (emphasis added); id. at *5 (“The Court is persuaded that dealer

price information is private.”) (emphasis added). But a trade secret must be more than private; it

must derive independent economic value from its privacy. See 18 U.S.C. § 1839(3)(B). So to the

extent the district court made factual findings as to the privacy of Kia’s records, those findings,

alone, could not establish the existence of a trade secret.

 To analyze whether the district court correctly declined to seal the records because they

contained no trade secrets (which would mean Kia lacked a compelling interest in filing them

under seal), then, we would need to make numerous factual findings in the first instance. This we

may not do. As an appellate court, our task is to review the district court’s factual findings, not to

supply our own findings when the district court hasn’t made them. See, e.g., Taglieri v. Monasky,

907 F.3d 404, 408 (6th Cir. 2018) (en banc) (noting the different roles that district courts and

appellate courts play when it comes to fact finding). Yet my colleagues overlook this glaring

deficiency.

 The district court erred a third time when it created a distinction between pre-sale and post-

sale product testing that lacks any basis in law or logic. For example, the court ordered unsealed

one record, which contained Kia’s projection of how many sunroofs will shatter in the future,

because the court saw a difference between “product development and manufacturing” and the

response to “product problems.” Kondash, 2018 WL 770418, at *5. The court also rejected Kia’s

request to keep sealed two records related to sunroof testing because the court characterized the

testing as “investigative” rather than testing for “developing a new product.” Id. I can find no

legal support for this distinction. “[T]he term ‘trade secret’ means all forms and types of financial,

 - 15 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

business, scientific, technical, economic, or engineering information,” 18 U.S.C. § 1839(3)

(emphasis added), not just what a company creates before a product’s release. Indeed, this

distinction makes little sense. Like many companies, Kia offers warranties for its products.

Warranties create ongoing customer relationships. To maintain those relationships, Kia must

respond to customer dissatisfaction. And Kia has an interest in responding better than its

competitors do: each time Kia turns a frown upside down, the more likely the company is to earn

the customer’s repeat business.

 The majority rejects Kia’s arguments regarding the district court’s testing distinction

because Kia hasn’t cited binding case law directly on point. Although the lack of such authority

tells us we are not required to side with Kia, it says nothing about whether we should. If a statute’s

plain language is clear (e.g., “‘trade secret’ means all forms and types of financial, business,

scientific, technical, economic, or engineering information”), we cannot abandon our interpretive

duties because another court hasn’t previously ruled on the issue.

 The district court’s fourth legal error came when it rejected some of Kia’s arguments

without explanation. Kia sought to keep sealed records relating to warranty repairs and goodwill

payments (which cover repairs of out-of-warranty vehicles) because the information revealed

failure rates for parts and the company’s approach to addressing customer dissatisfaction outside

the warranty period. The district court dismissed these arguments without discussing why they

lacked merit; it simply “reject[ed]” them. Kondash, 2018 WL 770418, at *5. When we review a

district court’s exercise of its discretion, we must have enough of an explanation to meaningfully

review its decision. See, e.g., Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1248 (6th Cir. 1997)

(faulting a district court for failing to explain the basis for its decision). A district court must do

more than state the rule and result, id., and here the district court didn’t even state the rule.

 - 16 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

 My colleagues neglect this error as well, rejecting Kia’s arguments in the same perfunctory,

conclusory fashion as the district court. They say “it is clear from the opinion that the court

determined whether the documents contained trade secrets independent of its consideration

regarding the public’s interest in the information.” But do they explain why that is so? No. They

also say “it is evident the Court applied Ohio’s standard for determining whether a trade secret

exists.” Not only is Ohio law likely the wrong law to apply—as I explain below—but the majority

yet again relies on a bare, unsupported conclusion.

 II.

 Next, we need to address the district court’s explanation for its decision to permit the

redaction of some records and to keep others sealed. The parties agreed to redact or seal certain

exhibits, and the district court accepted those compromises without much scrutiny. Kondash,

2018 WL 770418, at *2–3. As to the records that would be redacted, the district court explained

what they were (dealer invoices and design drawings) and then said only that it was “satisfied that

the[] redactions are narrowly-tailored [sic] and appropriate.” Id. at *3. And as to the exhibits that

would remain sealed, the district court again described what they were (technical-design details

and replacement-parts revenue information) and said that the technical records would remain

sealed because they contained “information about engineering modifications, Kia’s engineering

requirements, and related design elements” and that the revenue records would remain sealed

because “the dollar figures depicted are not publicly known.” Id.

 Although the majority does not address this ruling, I would, and I would hold that the

district court abused its discretion in four ways. First, when examining Kia’s technical records,

the district court again conflated the trade-secret standard with the records-sealing one. Whether

a record contains technical information matters when determining whether it contains trade secrets

but, standing alone, says nothing about whether the record should be sealed.
 - 17 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

 Second, when examining Kia’s revenue records, the district court premised its ruling on an

incomplete view of what constitutes a trade secret. That information is private, standing alone,

makes not a trade secret; the information must derive value from being private. 18 U.S.C.

§ 1839(3)(B). It must also be the right type of information, and it must be subject to reasonable

measures to maintain its privacy. Id. at § 1839(3), (3)(A). Although a record may warrant sealing

even if it doesn’t contain trade secrets, Kia never argued that its revenue records should remain

sealed for other reasons. Nor did the district court say that the private nature of the information

was itself a compelling reason to keep the records sealed—much less one that outweighed the

public’s interest in seeing them. And even had the district court said as much, that the records are

private says nothing about the scope of Kia’s request.

 Third, the district court failed to meet its burden of explanation. As we recognized in Shane

Group, a court that seals records must provide “specific findings and conclusions” to justify its

decision. 825 F.3d at 306. This obligation is independent of whether a party objects to sealing the

records. Id. And it requires the court to address “why the interests in support of nondisclosure are

compelling, why the interests supporting access are less so, and why the seal itself is no broader

than necessary.” Id. A court’s failure to meet this obligation is grounds to vacate an order to seal.

Id. Here, the district court addressed neither Kia’s interest in nondisclosure nor such an interest’s

weight relative to the public’s interest in access. The court did say Kia’s request was narrowly

tailored, but it never explained why that was so. The district court’s stated basis for its ruling was

therefore “brief, perfunctory, and patently inadequate.” Id.

 Fourth, to the extent that the district court meant to rest its decision on the existence of

trade secrets within the records, the district court again failed to make the required factual findings.

Nowhere did the district court determine whether Kia took reasonable steps to keep the information

 - 18 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

private or whether the information derived independent economic value from not being generally

known. 18 U.S.C. § 1839(3). Those are findings we may not make in the first instance.

 III.

 Finally, the district court, the parties, and now my colleagues have erred in assuming Ohio

law governs whether Kia’s documents contain trade secrets. In the past, state law governed civil

trade-secret inquires by default because there was no federal civil trade-secret law. But that

changed in 2016 with the enactment of the Defend Trade Secrets Act, 18 U.S.C. § 1836. Thus,

both federal law and Ohio law now define “trade secret” for the purposes of civil lawsuits.

 This overlap requires us to look to the Erie doctrine, which establishes that federal courts

sitting in diversity jurisdiction apply state substantive law and federal procedural law. Erie R.R.

Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Gasperini v. Ctr. for Humanities, Inc., 518 U.S.

415, 427 (1996). Whether federal law or Ohio law applies to the trade-secret inquiry, then, depends

on whether the issue is substantive or procedural.

 To identify the nature of a legal issue, the Supreme Court has adopted an “outcome-

determination test,” which asks whether it would “significantly affect” a lawsuit’s outcome if a

federal court applied federal law instead of state law that would have controlled had the lawsuit

remained in state court. Gasperini, 518 U.S. at 427–28 (quoting Guaranty Trust Co. v. York, 326

U.S. 99, 109 (1945)). In other words, the outcome of a case should be “substantially the same, so

far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.”

Guaranty Trust, 326 U.S. at 109. When applying this test, courts must consider Erie’s twin aims:

“discouragement of forum-shopping and avoidance of inequitable administration of the laws.”

Gasperini, 518 U.S. at 428 (quoting Hanna v. Plumer, 380 U.S. 460, 468 (1965)).

 Here, the issue appears to be procedural. Kondash has not sued Kia for trade-secret

misappropriation; his claims are for negligence, breach of express warranty, and breach of implied
 - 19 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

warranty. And how he files Kia’s records—under seal or in the open—seems unlikely to affect

the outcome of the case. He will still be able to file the records, and the district court will still

consider them. So sealing records will leave untouched how the district court (or eventually a

jury) resolves any ultimate issues in the case.

 Erie’s twin aims further suggest that the issue is procedural. Unless a party has the devious

ulterior motive of forcing its opponent to disclose trade secrets, it would have no reason to forum

shop—whether documents must be filed under seal is simply too far removed from a case’s merits.

Even if a party was so devious, it isn’t clear that federal law defines “trade secret” advantageously.

Every state except New York has adopted the Uniform Trade Secrets Act. See Legislative Bill

Tracking - Trade Secrets Act, https://tinyurl.com/y87nmbf5, (last visited Mar. 13, 2019) (listing

every state but New York and Massachusetts as having adopted the Act); H.B. 4868, 190th Gen.

Ct. (Mass. 2018), subsequently codified at Mass. Ann. Laws ch. 93, § 42 (LexisNexis) (adopting

the UTSA). And the Defend Trade Secrets Act and the Uniform Trade Secrets Act define “trade

secret” similarly: both refer to similar types of information; both require the information to be

subject to reasonable measures to keep it secret; and both require the information to derive value

from not being generally known. Compare 18 U.S.C. § 1839(3) with UTSA § 1(4)(i) (available at

https://tinyurl.com/ybqres3e (last visited Mar. 13, 2019)). Given these similarities, the distinction

between federal law and state law might be one without a difference. If that is so, application of

federal law would neither encourage forum shopping nor lead to inequitable administration of the

law because both federal and state law would compel the same result.

 So despite the majority’s mechanical application of Ohio law, federal law appears to apply.

That said, the parties have never had the opportunity to express their views on the issue. Thus,

 - 20 -
Case No. 18-3181, Kondash v. Kia Motors Am., Inc., et. al

because I would remand the case for application of the correct legal standard, I would also leave

it to the district court to determine in the first instance which law applies.

 * * *

 In sum, I would hold that the district court abused its discretion by: (1) conflating the trade-

secret standard with the record-sealing one; (2) failing to make the factual findings that a trade-

secret analysis requires; (3) inventing an illogical distinction between pre-sale and post-sale

product testing; (4) rejecting some of Kia’s arguments without explanation; (5) relying exclusively

on a factor that, alone, answers neither the trade-secret inquiry nor the records-sealing one; and

(6) failing to explain its basis for redacting some records and keeping others sealed. This does not

mean the district court necessarily erred in determining what to keep sealed, to unseal, or to redact.

Nor does this mean Kia necessarily met its burden of justifying its request to keep the records

sealed. Instead, I would remand to the district court to apply the correct legal standard.

 - 21 -